DECISION AND JUDGMENT ENTRY
{¶ 1} Ronnie Harrington appeals his convictions for possession and trafficking in crack cocaine. Harrington contends that the convictions are not supported by sufficient evidence. However, the record includes evidence that Harrington was seated for several hours within a few feet of a substantial amount of cocaine that had been prepared for wholesale distribution; he appeared to be "shuffling things about" when the police appeared; he made inconsistent statements about his reason for being present; he had a large sum of small bills in his pocket; and without being asked, he denied knowing an individual who the police observed selling drugs and who ran directly to Harrington while being chased. Thus, we conclude that a reasonable juror could be convinced that Harrington is guilty beyond a reasonable doubt and his convictions are supported by sufficient evidence.
 {¶ 2} Second, Harrington contends that his convictions are not supported by the manifest weight of the evidence. Based upon the same factors, we conclude that substantial, credible evidence supports the jury's decision to convict Harrington for possession and trafficking in crack cocaine. Because the jury did not lose its way and create a manifest miscarriage of justice, Harrington's convictions are supported by the manifest weight of the evidence.
 {¶ 3} Third, Harrington contends that his convictions must be reversed due to ineffective assistance of counsel. Because Harrington was not prejudiced by any of the alleged deficiencies of his trial counsel, this claim is also meritless.
 {¶ 4} Fourth, Harrington contends that the trial court erred in failing to order a mistrial due to tainting of the jury during voir dire. However, Harrington never requested mistrial. Nor did he suffer any prejudice in the trial court's failure to order a mistrial sua sponte. Thus, his contention that the trial court committed plain error in failing to order a mistrial is meritless.
 {¶ 5} Fifth, Harrington contends that the trial court erred in admitting the hearsay evidence of a fugitive in violation of his constitutional right of confrontation. Because the fugitive's statements were not testimonial in nature, their hearsay character did not violate the Sixth Amendment. Accordingly, this contention is meritless.
 {¶ 6} Sixth, Harrington contends that the trial court erred in admitting into evidence a videotape that was both irrelevant and more prejudicial than probative. We conclude that the trial court did not abuse its discretion in concluding that the videotape is relevant to help prove the State's theory that Harrington was a wholesale distributor of crack cocaine. Furthermore, Harrington's contention that the videotape was prejudicial because it depicted only African-American males is unsupported by the record. Accordingly, his contentions that the trial court abused its discretion are meritless.
 {¶ 7} Seventh, Harrington contends that the trial court erred in sentencing him to more than the minimum sentence and to consecutive sentences under R.C. 2929.14(E). We agree. Based on the recent holding in State v. Foster, (2006),109 Ohio St.3d 1, 845 N.E.2d 470, we remand the matter back to the trial court for re-sentencing consistent with that decision.
 {¶ 8} Finally, Harrington contends that the cumulative effect of trial court errors warrant the reversal of his conviction even if no single error constitutes reversible error. We conclude that because the only error we have found is in Harrington's sentencing, the cumulative error principle is inapplicable. Accordingly, we reject this contention.
 I. Facts {¶ 9} While conducting a surveillance of a bar called the Silver Moon, Portsmouth police observed a number of apparent drug sales outside the bar. After police watched a juvenile, later identified as Dennis White, making a drug sale, they pursued him into the bar. White ran toward Harrington and another individual, Ronald Gavin, who were seated behind a DJ booth in the bar. After subduing White, the officers ordered Harrington and Gavin out of the DJ booth, where they then observed crack cocaine and a .9mm pistol inside a CD player.
 {¶ 10} The grand jury indicted Harrington on six charges for trafficking in cocaine, possession of drugs, permitting drug abuse, possession of criminal tools, illegal possession of a firearm in a liquor establishment, and carrying concealed weapons. A jury found Harrington guilty of trafficking in cocaine and possession of drugs. The trial court sentenced Harrington to a prison term of nine years for each offense, to be served consecutively, for a total of eighteen years.
 {¶ 11} Harrington asserts the following assignments of error on appeal:
I. THE APPELLANT'S CONVICTION FOR TRAFFICKING IN COCAINE IS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
II. THE APPELLANT'S CONVICTION FOR POSSESSION OF DRUGS IS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
III. APPELLANT'S CONVICTION MUST BE REVERSED DUE TO THE INEFFECTIVENESS OF COUNSEL.
IV. THE TRIAL COURT ERRED IN FAILING TO ORDER A MISTRIAL DUE TO TAINTING OF THE JURY DURING VOIR DIRE.
V. THE TRIAL COURT ERRED IN PERMITTING HEARSAY TESTIMONY OF A FUGITIVE IN VIOLATION OF THE SIXTH AMENDMENT UNDER CRAWFORD V.WASHINGTON 541 U.S. 46.
VI. THE COURT ERRED IN PERMITTING THE INCLUSION OF EVIDENCE THAT WAS IRRELEVANT AND MORE PREJUDICIAL THAN PROBATIVE.
VII. THE COURT ERRED IN SENTENCING THE APPELLANT TO MORE THAN THE STATUTORY MINIMUM AND TO CONSECUTIVE SENTENCES SINCE HE IS A FIRST-TIME OFFENDER AND THE SENTENCING SCHEME UTILIZED BY THE COURT IS UNCONSTITUTIONAL.
VIII. CUMULATIVE ERRORS DEPRIVED THE APPELLANT OF A FAIR TRIAL.
II. Sufficiency and Weight of the Evidence
 {¶ 12} In his first and second assignments of error, Harrington contends that his convictions for trafficking and possession of cocaine are not supported by sufficient evidence and are against the manifest weight of the evidence.
 A. Sufficiency {¶ 13} When reviewing the sufficiency of the evidence, an appellate court examines the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.Id., citing Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 14} Harrington was convicted of one count of trafficking in crack cocaine in violation of R.C. 2925.03(A)(1)/(C)(4)(a) and one count of possession of drugs in violation of R.C.2925.11(A)/(C)(4)(e). R.C. 2925.03(A)(1)/(C)(4)(a) prohibits an individual from knowingly selling or offering to sell a controlled substance. R.C. 2925.11(A)/(C)(4)(e) prohibits an individual from knowingly obtaining, possessing or using a controlled substance.
 {¶ 15} "Possession" of a particular item of contraband, such as drugs, may be actual or constructive. State v. Wolery
(1976), 46 Ohio St.2d 316, 329, 348 N.E.2d 351. A person has "actual possession" if the item is within his immediate physical possession. State v. Fugate (Oct. 2, 1998), Scioto App. No. 97 CA 2546, 1998 WL 729221. "Constructive possession" exists when an individual is able to exercise dominion and control over an item, even if the individual does not have immediate physical possession of it. State v. Hankerson (1982), 70 Ohio St.2d 87,434 N.E.2d 1362, at the syllabus. For constructive possession to exist, "[i]t must also be shown that the person was conscious of the presence of the object." Hankerson, 70 Ohio St.2d at 91,434 N.E.2d 1362. Dominion and control, as well as whether a person had conscious presence of an item of contraband, may be established by circumstantial evidence. See State v. Jenks(1991), 61 Ohio St.3d 259, 272-73, 574 N.E.2d 492.
 {¶ 16} The evidence demonstrated that the Portsmouth Police conducted surveillance on the Silver Moon bar and observed a number of apparent drug sales outside the bar. Officer Bryant testified that individuals would arrive on foot or by car to purchase what he believed to be crack cocaine. He also testified that he observed people entering the bar and then leaving very quickly, which would not be consistent with normal bar patronage.
 {¶ 17} Officer Bryant observed a juvenile, later identified as Dennis White, making a drug sale. After Officer Bryant communicated this information to Officer Timberlake and Investigator Duduit, they decided to rush in to arrest the street vendor before he could enter the bar. Timberlake and Duduit tried the "bum rush," but White fled and entered the bar. Brittany Womack, a bartender at the Silver Moon, testified in her deposition that she saw White run into the bar with the two officers chasing behind him. She testified that he ran directly to the back of the bar where the DJ booth and the appellant were located.
 {¶ 18} Officer Timberlake testified that he and Investigator Duduit quickly followed White into the bar, and observed White fall next to the DJ booth. Officer Timberlake testified that as he was securing White, which occurred less than five seconds after they entered the bar, he noticed Harrington and Gavin shuffling around in the DJ booth. Officer Timberlake testified that he quickly ordered the two to come out of the booth. He then testified that they both immediately responded by saying that they were only DJs, that they did not know White, and that they were not doing anything.
 {¶ 19} The State contended Harrington's statements create an inference that Harrington knew what had been occurring outside the bar. Furthermore, the State contended that a "normal response" would not have been so quick and would have asked the officer what happened or if he needed assistance, rather than immediately indicating the lack of involvement in any misconduct.
 {¶ 20} Officer Timberlake testified that as he entered the DJ booth, he saw crack cocaine in plain view inside the tinted window of the CD changer located within two feet of the stool where Harrington had been seated for most of the previous three hours. Within a matter of seconds, Officer Timberlake stated, "hey, there is a bag of dope here." Harrington responded by contradicting his earlier statements and saying that he was, in fact, not the DJ, and that the drugs belonged to Gavin.
 {¶ 21} The crack cocaine that Officer Timberlake found inside the CD changer had been cut and prepared for wholesale distribution in baggies. The drugs were within an arm's length of the stool on which Harrington had been sitting during the night. In total, Officer Timberlake confiscated fourteen "8-balls" of crack cocaine, each one in a separate baggie, a ten gram rock of crack cocaine equal to three "8-balls," a number of baggies, some of which include cocaine residue, and digital scales. Officer Timberlake also found $1636 in small bills on Harrington.
 {¶ 22} At trial, counsel for Harrington did not introduce any evidence. He defended by arguing the state failed to prove "who done it." On appeal, Harrington contends that the State has not produced any evidence to link Harrington to the drugs or the sales. He points to the absence of any evidence that he opened or touched the CD player; a lack of his fingerprints on any of the drugs or paraphernalia; his absence in the surveillance tapes that show drug transactions outside the bar and the absence of any sales inside the bar.
 {¶ 23} Citing State v. Weber (March 24, 2000) Montgomery County App. No. CA 17800, 2000 WL 299564, Harrington contends his mere presence in the DJ booth is not enough evidence to indicate constructive possession. We agree that Weber correctly states the law, however, the facts in Weber are not analogous to the situation here. Weber was the lessee of an apartment and was convicted of possession of drugs on the sole basis that he controlled the property through his lease. The State had no other evidence linking him to the drugs. The Court of Appeals reversed the conviction and held that mere ownership of property is insufficient for a conviction of possession of contraband found on that property. Weber would be applicable if the State had charged the owner of the bar with possession and/or trafficking merely because he owned the bar.
 {¶ 24} Here, the evidence indicates that Harrington was inside the DJ booth and seated next to a substantial amount of crack cocaine for nearly the entire night. Numerous drug sales occurred outside the bar during the night, and various people entered and exited the bar within short periods of time. A juvenile, who police observed selling crack, ran directly towards Harrington in the DJ booth upon being chased into the bar by police. Furthermore, instead of acting surprised at the sight of the pursuit of the juvenile and his subsequent arrest, Harrington immediately started denying his role in any of the alleged transactions or knowing White. Harrington initially stated that he was the DJ because he apparently believed it would be to his advantage. But when the officer discovered the crack in the DJ booth, he immediately contradicted himself and denied being the DJ. He placed the blame on Gavin. When he was searched, the police discovered a large sum of small bills in Harrington's pocket. They found nothing on Gavin. Viewed together, this evidence, though circumstantial in nature, could convince a jury beyond a reasonable doubt that Harrington constructively possessed and trafficked in cocaine, i.e., he's the one "who done it." Accordingly, Harrington's convictions are supported by sufficient evidence.
 B. Manifest Weight {¶ 25} Having concluded that there is sufficient evidence to support Harrington's convictions, we now consider whether the convictions are against the manifest weight of the evidence. Our function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. State v. Thompkins, (1997)78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. Id., citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Only If we find that the factfinder clearly lost its way, can we reverse the convictions.Id. On the other hand, we must not reverse a conviction if the State presented substantial evidence upon which a jury could conclude that all the essential elements of the offense were established beyond a reasonable doubt. State v. Getsy,84 Ohio St.3d 180, 193-194, 1998-Ohio-533, 702 N.E.2d 866; State v.Eley (1978), 56 Ohio St.2d 169, 383 N.E.2d 132, syllabus.
 {¶ 26} The only issue in contention is whether the state linked Harrington to the possession and distribution of the drugs. Based upon the same evidence we highlighted in our review of sufficiency, we conclude that it did. Accordingly, Harrington's first two assignments of error are overruled.
 III. Ineffectiveness of Counsel {¶ 27} In his third assignment of error, Harrington contends that his conviction must be reversed due to the ineffectiveness of counsel.
 {¶ 28} The Sixth Amendment to the United States Constitution and Section 10, Article I, of the Ohio Constitution provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has generally interpreted this provision to mean that a criminal defendant is entitled to the "reasonably effective assistance" of counsel. Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674, 693. In order to prove the ineffective assistance of counsel, a criminal defendant must show that (1) counsel's performance was in fact deficient, i.e., not reasonably competent, and (2) such deficiencies prejudiced the defense so as to deprive the defendant of a fair trial.Strickland, 466 U.S. at 687, 80 L.Ed.2d at 693; State v.Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. Failure to establish either element is fatal to the claim. Strickland, 466 U.S. at 687, 80 L.Ed.2d at 693.
 {¶ 29} When considering whether trial counsel's representation amounts to a deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. The United States Supreme Court has noted that "there can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial." United States v. Hasting (1983),461 U.S. 499, 508-509, 103 S.Ct. 1974, 76 L.Ed.2d 96.
 A. Venire {¶ 30} First, Harrington contends that in light of the fact that he was the only African-American in the courtroom, counsel's failure to object to the venire under Batson v. Kentucky
(1986), 476 U.S. 79, 90 L.E.2d, 69, constituted ineffective assistance of counsel. In Batson, the United States Supreme Court held that "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." Batson at 86, 90 L.E.2d 80.
 {¶ 31} The Sixth Amendment guarantee to a jury trial "contemplates a jury drawn from a fair cross section of the community." Taylor v. Louisiana (1975), 419 U.S. 522, 527,95 S.Ct. 692, 696, 42 L.Ed.2d 690, 696. To establish a violation of this requirement, the "defendant must prove: (1) that the group alleged to be excluded is a `distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the representation is due to systematic exclusion of the group in the jury-selection process." State v. Fulton (1991),57 Ohio St.3d 120, 566 N.E.2d 1195, paragraph two of the syllabus, citingDuren v. Missouri (1979), 439 U.S. 357, 364, 99 S.Ct. 664, 668,58 L.Ed.2d 579, 586-587.
 {¶ 32} A criminal defendant has no affirmative right to a jury of a particular racial, gender or age composition. SeeUnited States v. Mack, 159 F.3d 208 (6th Cir. 1998); see alsoTaylor v. Louisiana, 419 U.S. 522, 538, 95 S.Ct. 692,42 L.Ed.2d 690 (1975). Harrington's contention that his counsel should have made a Batson challenge is based solely on alleged under representation on his venire. Had counsel raised theBatson issue on this basis alone, he could not have prevailed. Lack of any evidence supporting the other two Batson elements would have made such a claim futile. See, e.g., United States v.Allen, 160 F.3d 1096, 1103-04 (6th Cir. 1998) (finding noSixth Amendment fair cross-section violation where defendants failed to meet second and third prongs of prima facie case). Moreover, under representation on a single venire is not systematic exclusion. State v. McNeill (1998), 83 Ohio St.3d 438, 444,700 N.E.2d 596.
 {¶ 33} Counsel is not required to perform futile acts. Statev. Mitchell (1988), 53 Ohio App.3d 117, 119, 559 N.E.2d 1370. Thus, Harrington cannot show that his trial counsel's failure to object to venire resulted in a deficient performance that prejudiced his defense.
 B. Prospective Jurors {¶ 34} Second, Harrington contends that trial counsel's failure to object and request a mistrial due to statements made by prospective jurors Sgt. Dwyer, Ms. Smith, and Ms. Knapp constituted ineffective assistance of counsel. We will analyze this contention together with that part of Harrington's fourth assignment of error in which he contends that the trial court should have ordered a mistrial due to tainting of the jury during voir dire.
 {¶ 35} In response to questions posed to him during voir dire, Dwyer stated that he is biased against people with guns because he was shot by a dope runner while he served as a state trooper. Nevertheless, Dwyer stated that he understood the defendant is innocent until proven guilty, and he could set aside his biases. Dwyer was subsequently excused from serving as a juror.
 {¶ 36} During voir dire of Ms. Smith, she stated that she has a negative perception of people involved with drugs because drugs devastated the lives of her grandson and his family. She also stated that she believes that the only time when drug users are not lying is when they are asleep. Ms. Smith stated that she did not know if she could view the evidence impartially, and, accordingly, the court excused her from serving as a juror.
 {¶ 37} During voir dire of Ms. Knapp, she stated that she has a bias towards certain bars in Scioto County because of what she has heard about them. She also stated that based on what she has heard, she would never go into the Silver Moon bar. She further stated that regardless of what she has heard, she is capable of listening to the evidence impartially. She ultimately served as a juror.
 {¶ 38} Harrington contends that these statements made during voir dire tainted the remaining jury pool by creating a bias against him. He contends that the trial court erred by not ordering a mistrial even though his counsel failed to move for one.
 {¶ 39} We conclude that the trial court did not create plain error in failing to grant a mistrial based on these statements of prospective jurors. As we stated in State v. Keaton (Dec. 5, 1986), Pickaway App. No. 85CA27, 1986 WL 13651, at fn. 3, a party who discovers that he has been materially prejudiced must make an objection and move for a mistrial as soon as he discovers the grounds for that motion. Failure to make a timely objection results in waiver of the issue. Harrington contends his counsel's omission results in ineffective assistance.
 {¶ 40} We do not believe the statements made by the prospective jurors during voir dire were so inflammatory as to mandate granting a mistrial. In State v. Glover (1988),35 Ohio St.3d 18, 19, 517 N.E.2d 900, the Supreme Court of Ohio discussed how an appellate court should review an assignment of error concerning a motion for a mistrial. The court wrote:
* * * In evaluating whether the declaration of a mistrial was proper in a particular case, this court has declined to apply inflexible standards, due to the infinite variety of circumstances in which a mistrial may arise. * * * This court has instead adopted an approach which grants great deference to the trial court's discretion in this area, in recognition of the fact that the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial.
The statements made by Dwyer, Ms. Smith, and Ms. Knapp were general statements about each person's views towards drug dealers and users and certain area bars. None of the statements related directly to Harrington or created any bias against him individually. Because the trial court was in the best position to determine whether a mistrial was warranted, we grant great deference to its determination. After reviewing the record, we find nothing to indicate that the trial court erred by not sua sponte declaring a mistrial based on the statements of these three prospective jurors.
 {¶ 41} Likewise, we also conclude that Harrington's trial counsel was not ineffective for failing to move for a mistrial. Because we concluded a mistrial was not mandated, it follows that Harrington's counsel's failure to request one did not prejudice his defense. Again, trial counsel is not required to perform futile acts. State v. Mitchell, 53 Ohio App.3d at 117,559 N.E.2d 1370. Having found no error, let alone plain error, we reject this assignment.
 C. Sentencing {¶ 42} Third, Harrington contends that trial counsel's failure to object at sentencing constituted ineffectiveness based upon Apprendi v. New Jersey and Blakely v. Washington. In light of our reversal and remand for resentencing below, this assignment of error is moot.
 IV. Hearsay Testimony of a Fugitive {¶ 43} In his fifth assignment of error, Harrington contends that the trial court erred in admitting the hearsay evidence of Ronald Gavin, a fugitive, who was with Harrington in the DJ booth when Harrington was arrested. Harrington contends that underCrawford v. Washington (2004), 541 U.S. 36, 124 S.Ct. 1354, the trial court deprived him of his Sixth Amendment right to confront witnesses by admitting Gavin's out of court statements in the absence of an opportunity to cross-examine him under oath. InCrawford, the United States Supreme Court held that testimonial statements of a witness who does not appear at trial may not be admitted unless the declarant is unavailable to testify and the defendant has had a prior opportunity for cross-examination.
 {¶ 44} The first question we must answer is whether Gavin's statements to Officer Timberlake were "testimonial." InCrawford, the Supreme Court described "testimonial" evidence as "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. at 52,124 S.Ct. at 1364, citing Brief for National Association of Criminal Defense Lawyers et al. as Amici Curiae 3. Statements taken by police officers during the course of interrogations are considered "testimonial" evidence, even though the interrogations are not sworn testimony. Id. at 52, 124 S.Ct. at 1364.
 {¶ 45} Here, Officer Timberlake testified that he pursued White into the bar, and White ran in the direction of a DJ booth. Immediately after he had subdued White, Officer Timberlake testified that he noticed two people shuffling around in the DJ booth. Officer Timberlake indicated he ordered both men to come down from the DJ booth, and they complied. The two men were later identified as Gavin, and the defendant, Harrington. Officer Timberlake then testified that as they were coming down from the DJ booth, both men simultaneously stated that they did not know White, that they did not do anything, and that they were just the DJs at the bar. The trial court admitted the statements attributed to Gavin over the objection of defense counsel.
 {¶ 46} After reviewing the transcript, we conclude that the statements made by Gavin are not "testimonial" evidence because they did not result from an interrogation. Gavin's statements that he was not the DJ, that he did not do anything, and that he did not know White, were all unsolicited. His statements were not initiated by Officer Timberlake's questioning, but were given voluntarily and impulsively. Because Gavin's statements were not testimonial, the court did not violate Harrington's constitutional right to confront witnesses by admitting them into evidence. Harrington's fifth proposed assignment of error lacks merit.
 V. Inclusion of Evidence {¶ 47} In his sixth assignment of error, Harrington contends that the trial court erred in admitting irrelevant evidence that was more prejudicial than probative. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Generally, the admission or exclusion of relevant evidence rests within the sound discretion of the trial court and its decision to admit or exclude such evidence will not be disturbed absent an abuse of that discretion. State v. Sage
(1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus; State v. Reed (1996), 110 Ohio App.3d 749, 752,675 N.E.2d 77. An abuse of discretion consists of more than an error of judgment; it connotes an attitude of the trial court that is unreasonable, unconscionable, or arbitrary. State v. Lessin,67 Ohio St.3d 487, 494, 1993-Ohio-52, 620 N.E.2d 72. When applying the abuse of discretion standard, we are not free to merely substitute our judgment for that of the trial court. In re JaneDoe I (1991), 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181, citing Berk v. Matthews (1990), 53 Ohio St.3d 161,559 N.E.2d 1301.
 {¶ 48} Harrington contends that the trial court erred in admitting excerpts from a surveillance video taken over several hours at the Silver Moon bar on the night of his arrest. Harrington contends that the video was irrelevant to the charges against him because it did not depict him, but showed other people selling drugs and fighting outside the bar.
 {¶ 49} At trial, the State introduced the portion of the video that showed White engaging in various alleged drug transactions, and then being chased into the bar. Counsel for Harrington objected to the video asserting that it placed Harrington in a bad light, even though Harrington did not appear in the video. The trial court admitted the video and permitted Officer Bryant to narrate during his testimony.
 {¶ 50} The trial court did not abuse its discretion in admitting the video into evidence because it is relevant to the state's theory of the case. By presenting the video, the state attempted to show that White participated in numerous drug sales outside of the bar, and then ran inside towards Harrington once the police arrived. The video makes the existence of the fact that Harrington participated in a drug distribution chain more probable than it would be without this piece of evidence.
 {¶ 51} Harrington further contends that even if the video is relevant, its prejudicial effect substantially outweighs its probative value. Evid.R. 403(A) states: "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." The rule indicates a preference for admitting relevant evidence by requiring the opponent to show its relevance is substantially outweighed by its unfair impact. See State v. Frazier (1995),73 Ohio St.3d 323, 332, 652 N.E.2d 1000. Harrington contends that the video's display of African-American men selling drugs and fighting is more prejudicial to Harrington, who is also an African-American, than it is probative of any relevant issue.
 {¶ 52} The trial court did not abuse its discretion by concluding Harrington failed to carry his burden of establishing that the probative value was substantially outweighed by unfair prejudice or confusion. Harrington's assertion that the video only depicted African-American men is not supported by the record. Officer Bryant identified two African-American men fighting, but he did not identify the other two individuals on the video by their race. Furthermore, during his testimony commenting on the video, Officer Bryant testified that "[a] lot of the people that you see walking into the bar right now, primarily the white females, you will usually see them exit within a couple of minutes after going into the bar."
 {¶ 53} Accordingly, the trial court did not abuse its discretion in finding Harrington failed to show that the video was more prejudicial than probative. His sixth assignment of error is meritless.
 VI. Sentencing {¶ 54} In his seventh assignment of error, Harrington contends that the trial court erred in sentencing him to more than the statutory minimum sentence and to consecutive sentences because the sentencing scheme utilized by the court is unconstitutional.
 {¶ 55} The court issued the necessary findings under R.C.2929.14(B), to impose more than the presumptive minimum sentence, and (E), to impose consecutive sentences. However, the Ohio Supreme Court recently held in, State v. Foster (2006),109 Ohio St.3d 1, 845 N.E.2d 470, that R.C. 2929.14(B) and (E) were unconstitutional because they require judicial factfinding.
 {¶ 56} Accordingly, we reverse the trial court's sentence and remand this matter for resentencing consistent with Foster.
 VII. Cumulative Errors {¶ 57} In his eighth assignment of error, Harrington contends that the cumulative effect of trial court errors warrant the reversal of his conviction even if no single error constitutes reversible error. Before we consider whether "cumulative errors" are present, we must first find that the trial court committed multiple errors. State v. Goff (1998), 82 Ohio St.3d 123, 140,694 N.E.2d 916. Because the only error we have found is in Harrington's sentencing, the umulative error principle is inapplicable. Accordingly, Harrington's eighth assignment of error is meritless.
JUDMENT AFFIRMED IN PART, REVERSED IN PART AND CAUSE REMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART AND CAUSE REMANDED. Appellant and Appellee shall split the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. McFarland, J.: Concur in Judgment and Opinion.