[Cite as *State v. May*, 2018-Ohio-1510.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 106003

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**CYNTHIA D. MAY**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-613335-A

**BEFORE:** Boyle, P.J., Blackmon, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** April 19, 2018

**ATTORNEY FOR APPELLANT**

Russell S. Bensing
600 IMG Building
1360 East Ninth Street
Cleveland, Ohio   44114


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:   Brandon Piteo
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, P.J.:

**{¶1}** Defendant-appellant, Cynthia May, appeals her convictions and raises one assignment of error for our review:

> The Trial Court erred in entering convictions for Aggravated Vehicular Assault under R.C. 2903.08(A)(1)(a) and R.C. 4511.19(A)(1)(a), because the evidence was insufficient to support the convictions.

**{¶2}** Finding no merit to her assignment of error, we affirm.

## I. Procedural History and Factual Background

**{¶3}** On February 14, 2017, a Cuyahoga County Grand Jury indicted May for seven counts of felonious assault in violation of R.C. 2903.11(A)(1) and (2), two counts of aggravated vehicular assault in violation of R.C. 2903.08(A)(2)(b), and one count of driving while under the influence in violation of R.C. 4511.19(A)(1)(a).

**{¶4}** May waived her right to a jury trial, and the following facts were presented to the bench.

**{¶5}** On June 30, 2016, Carla Ruffin, Phyllis Patterson-Brown ("Brown"), and Nicole Patterson went to Your Place and Mine, a bar on East 55th Street in Cleveland. Patterson's husband worked there as a security guard. Ruffin drove the women in her car, a 2002 white Chevy Malibu, and they arrived at the bar around 9:00 p.m.

**{¶6}** After the women ordered drinks, Patterson began talking to May, who was also drinking at the bar that night. While witnesses for the state and May gave different answers when asked how many and what type of drinks May had that night, May testified that she had two drinks. According to some of the state's witnesses, May was very emotional while at the bar with Brown and Patterson. Brown testified that May had a number of drinks, including Long Island iced teas and wine and was intoxicated.

{¶7} At some point, Patterson and May began arguing inside the bar. The argument escalated as others became involved. Eventually, a number of patrons, including Patterson, Brown, May, and Ruffin, walked outside toward May's vehicle and continued to argue.

{¶8} According to the state's witnesses, May began threatening Ruffin and swung her fist at her. Ruffin dodged the swing and responded by punching May with her keys and knocking her to the ground. Contrary to the state's witnesses, May testified that Ruffin attacked her first and that a number of people assaulted her after she was knocked to the ground. During the fight, May bit Ruffin's finger, causing it to bleed. May was also bleeding from cuts on her head and elbow as a result of the fight. The physical altercation was eventually broken up, and the women went their separate ways. The other patrons who were watching the fight also dispersed, some heading back toward the bar.

{¶9} Ruffin, Patterson, and Brown returned to Ruffin's vehicle. Ruffin, who wanted to go to the hospital to get her finger looked at, sat in the backseat, while Patterson sat in the front passenger seat and Brown sat in the driver's seat. May returned to her own vehicle, a white Mitsubishi Galant, and started the ignition. Video surveillance from Your Place and Mine shows that a few moments later, May's car sped toward and collided with Ruffin's car as well as other vehicles nearby. May's car flipped onto its roof after colliding with the cars.

{¶10} Witnesses testified that, despite her car being upside down, May immediately exited her vehicle and began walking away from the scene. Two individuals who witnessed the accident, however, ran after her to check on her well-being and brought her back to the bar's parking lot.

{¶11} May testified that she lost consciousness after she turned on the ignition to her vehicle and began to pull out of her parking spot. She testified that the next thing she could

remember was dangling from her driver's seat, strapped in by her seat belt.

{¶12} As a result of the crash, Ruffin, Patterson, and Brown suffered minor injuries. The collision left another man who was in the parking lot, Barry Tingle, pinned between two cars. Tingle suffered a fractured tibia and a "gash" on one of his legs.

{¶13} After receiving a 911 call, EMS personnel arrived and placed May inside an ambulance and began treating some of the wounds she suffered as a result of the fight and crash. Police officers, who showed up after the EMS, interviewed witnesses and victims on the scene, including May, and obtained video surveillance showing the crash. Officers testified that during their interview with May, she refused to take a breathalyzer test, had glassy eyes, and smelled of alcohol. The officers testified that they did not perform field sobriety tests because of May's injuries. EMS subsequently transported May to MetroHealth hospital for further treatment. At the hospital, officers interviewed May further and requested that she submit to a blood draw, which she refused.

{¶14} The next day, May spoke to Detective Garner, who videotaped the interview and obtained her version of the events. May told the detective that she was unconscious during the time that her vehicle came into contact with Ruffin's vehicle.

{¶15} At trial, May moved the court for an acquittal pursuant to Crim.R. 29 after the state rested its case. The court granted May's motion with respect to one of the counts for felonious assault, but denied the motion with respect to the remaining counts. After May took the stand in her defense, she again moved the court for an acquittal under Crim.R. 29, which the court denied again.

{¶16} The court found May guilty of six counts of felonious assault, two counts of aggravated vehicular assault, and one count of driving while under the influence. The court

merged a number of the counts. As a result, the court sentenced May to six months for driving under the influence, one year for aggravated vehicular assault, and two years each for the three felonious assault counts. The court ran all of those sentences concurrent to one another, resulting in a two-year sentence. Further, as related to her conviction for aggravated vehicular assault, the court suspended May's driver's license for five years and mandated that she receive an alcohol/drug assessment and treatment and pay a fine for her conviction for driving under the influence. Finally, the court imposed mandatory postrelease control for three years after May completed her prison sentence.

{¶17} It is from this judgment that May appeals.

## II. Law and Analysis

{¶18} In her sole assignment of error, May challenges the sufficiency of evidence underlying her convictions for aggravated vehicular assault under R.C. 2903.08(A)(1)(a) and operating a vehicle while under the influence of alcohol under R.C. 4511.19(A)(1)(a).

{¶19} A sufficiency challenge essentially argues that the evidence presented was inadequate to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis sic.) *State v. Getsy*, 84 Ohio St.3d 180, 193, 702 N.E.2d 866 (1998), quoting *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "[A] conviction based on legally insufficient evidence constitutes a denial of due process." *Thompkins* at 386, citing *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed. 652 (1982).

{¶20} The court convicted May of two counts of aggravated vehicular assault in violation

of R.C. 2903.08(A)(1)(a), which supports a conviction for aggravated vehicular assault if the person causes serious physical injury as a proximate result of operating a motor vehicle while impaired under R.C. 4511.19. The court also convicted May of operating a vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a).

{¶21} In her brief, May argues that there was insufficient evidence to convict her under R.C. 2903.08(A)(1)(a) and 4511.19(A)(1)(a) because the only evidence supporting a finding that she was impaired was testimony that she had glassy eyes and smelled of alcohol after the accident. She also points to statements made by some of the state's witnesses who believed that May was not intoxicated, but only upset.

{¶22} Foremost, "an evaluation of the witness's credibility * * * is not proper on review for evidentiary sufficiency." *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79. Therefore, while May is correct that some of the state's witnesses testified that they did not believe that she was impaired, that testimony goes to the credibility of the witnesses and weight, not sufficiency, of the evidence.

{¶23} Further, a trier of fact may rely on direct and circumstantial evidence in evaluating a defendant's guilt because both types of evidence carry the same weight and possess the same probative value. *State v. Lash*, 8th Dist. Cuyahoga No. 104310, 2017-Ohio-4065, ¶ 31. In fact, "[a] conviction can be sustained based on circumstantial evidence alone." *State v. Franklin*, 62 Ohio St.3d 118, 124, 580 N.E.2d 1 (1991).

{¶24} Under R.C. 4511.19(A)(1), "No person shall operate any vehicle * * * if, at the time of the operation, * * * [t]he person is under the influence of alcohol[.]" "The term 'under the influence' means that 'the defendant consumed some [alcohol], * * * in such a quantity, whether small or great, that it adversely affected and appreciably impaired the defendant's

actions, reactions, or mental processes under the circumstances then existing[.]'" *State v. Clark*, 8th Dist. Cuyahoga No. 88731, 2007-Ohio-3777, ¶ 12, quoting 4 *Ohio Jury Instructions* 6, Section 545.25. "[T]he state can rely on physiological factors (e.g., odor of alcohol, glossy or bloodshot eyes, slurred speech, confused appearance) to demonstrate that a person's physical and mental ability to drive was impaired." *State v. Kilbane*, 8th Dist. Cuyahoga No. 99485, 2014-Ohio-1228, ¶ 23, citing *Clark*. The state may also submit evidence that a person refused to submit to a chemical test to determine alcohol consumption, and use lay-witness testimony to establish that an individual is intoxicated. *Maumee v. Anistik*, 69 Ohio St.3d 339, 344, 632 N.E.2d 497 (1994); *State v. Zetner,* 9th Dist. Wayne No. 02CA0040, 2003-Ohio-2352, ¶ 19, citing *State v. DeLong*, 5th Dist. Fairfield No. 02CA35, 2002-Ohio-5289.

**{¶25}** Viewing the evidence in a light most favorable to the prosecution, we find the state presented sufficient evidence that a reasonable trier of fact could conclude that May was driving under the influence under R.C. 4511.19(A)(1) and, thus, committed aggravated vehicular assault under R.C. 2903.08(A)(1)(a). Here, May admitted that she consumed alcohol at Your Place and Mine that night. A number of witnesses, including May herself, testified that she had more than one alcoholic beverage while inside the bar. Brown, who testified that she had a number of drinks with May, stated that when she and May walked outside the bar, May was "staggering."

**{¶26}** Further, Officers Calhoun and Porter, who were on the scene immediately following the accident, testified that May had glassy eyes and detected an odor of alcohol coming from May's person. The officers also testified that May refused to submit to a breathalyzer test and a blood draw. *See Westerville v. Cunningham*, 15 Ohio St.2d 121, 239 N.E.2d 40 (1968), paragraph one of the syllabus ("The refusal of one accused of intoxication to take a reasonably reliable chemical test for intoxication may have probative value on the question as to whether he

was intoxicated at the time of such refusal.").

{¶27} Finally, the state admitted a number of exhibits, including video surveillance from the bar's parking lot. The footage shows May's car traveling at a high rate of speed, swerving, and directly hitting the vehicle containing the women with whom May was arguing with moments earlier. A trier of fact could certainly relate that dangerous and erratic driving to alcohol impairment.

{¶28} While there was no direct evidence of the level of alcohol content in May's blood, we find that the state presented sufficient direct and circumstantial evidence to allow a trier of fact to determine that May operated a vehicle while impaired, thereby supporting her convictions for aggravated vehicular assault under R.C. 2903.08(A)(1)(a) and operating a motor vehicle while under the influence of alcohol under R.C. 4511.19(A)(1)(a).

{¶29} May also argues that the fact that the trier of fact convicted her of multiple counts of felonious assault establishes that she was not impaired because that offense requires an intentional act. Specifically, in her brief, May states, "Any evidence of impaired driving runs contrary to the State's theory" "that the collision was not an accident, but that Ms. May intentionally drove her car into" the victims' vehicle. In other words, she argues that she could not commit an intentional act if she was impaired and, thus, cannot be convicted of both felonious assault under R.C. 2903.11(A)(1) and (2) and aggravated vehicular assault under R.C. 2903.08(A)(1)(a).

{¶30} When determining whether a defendant was under the influence for purposes of R.C. 4511.19, the defendant's criminal intent is irrelevant. *State v. Andera*, 8th Dist. Cuyahoga No. 92306, 2010-Ohio-3304, ¶ 19. On the other hand, under R.C. 2903.11(A), the mental state for felonious assault is "knowingly." "A person acts knowingly, regardless of purpose, when

the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶31} Here, the facts and circumstances presented at trial showed that May and the victims were arguing in the parking lot and engaged in a physical altercation before May got into her vehicle. A few moments later, May's vehicle ran into the victims' vehicle. That evidence tends to show that May was impaired, but still knew what she was doing and whose car she was driving toward.

{¶32} In conclusion, we reject May's argument that it is legally impossible to be impaired and to commit an intentional act. Impaired individuals commit intentional acts all of the time. Accordingly, we overrule May's sole assignment of error.

{¶33} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

PATRICIA ANN BLACKMON, J., and

ANITA LASTER MAYS, J., CONCUR