**[Cite as *State v. Brock*, 2024-Ohio-1036.]**

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. 22CA38 & 22CA39 |
| v. | : | |
| RASHEED BROCK, | : | DECISION AND JUDGMENT ENTRY |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Christopher Bazeley, Cincinnati, Ohio, for appellant[1].

Anna Villarreal, Chillicothe Law Director, and Jason M. Miller, Assistant Law Director, Chillicothe, Ohio, for appellee.

_____
CRIMINAL APPEAL FROM MUNICIPAL COURT
DATE JOURNALIZED:3-15-24
ABELE, J.

{¶1} This is an appeal from a Chillicothe Municipal Court judgment of conviction and sentence. Rasheed Brock, defendant below and appellant herein, assigns five errors for review:

> FIRST ASSIGNMENT OF ERROR:
>
> "BROCK'S CONVICTION FOR HAVING FICTITIOUS PLATES IS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE."

---

[1] Different counsel represented appellant during the trial court proceedings.

SECOND ASSIGNMENT OF ERROR:

"THE JURY INSTRUCTION REGARDING THE ELEMENTS OF
THE OFFENSE OF FICTITIOUS PLATES IS ERRONEOUS
AS A MATTER OF LAW."

THIRD ASSIGNMENT OF ERROR:

"THE FINDING THAT BROCK WAS IMPAIRED WHILE
DRIVING IS SUPPORTED BY INSUFFICIENT EVIDENCE."

FOURTH ASSIGNMENT OF ERROR:

"BROCK'S CONVICTION FOR FAILURE TO COMPLY IS
NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE OR
LEGALLY SUFFICIENT EVIDENCE."

FIFTH ASSIGNMENT OF ERROR:

"BROCK'S CONVICTION FOR DRIVING WITHOUT AN
OPERATOR'S LICENSE IS SUPPORTED BY INSUFFICIENT
EVIDENCE."

{¶2} On June 15, 2021, Victoria Bartlett observed a gold Chevrolet Impala driving erratically and called 911.  After appellant eluded Chillicothe Police Officer Adam Steele for several blocks, Steele eventually stopped appellant for multiple violations.

{¶3} In Case No. 22CA38, the complaint charged appellant with (1) operating a motor vehicle while under the influence of alcohol or a drug of abuse in violation of R.C. 4511.19(A)(1)(a), a first-degree misdemeanor, (2) driving without a license in violation of R.C. 4510.12, an unclassified misdemeanor, (3) fictitious registration in violation of R.C. 4549.08, a fourth-degree

misdemeanor, and (4) driving left of center in violation of R.C. 4511.29, a minor misdemeanor.

{¶4} In Case No. 22CA39, the complaint charged appellant with (1) failure to comply with an order or signal of a police officer in violation of R.C. 2921.331, a first-degree misdemeanor, and (2) possession of drug paraphernalia in violation of R.C. 2925.14(C), a fourth-degree misdemeanor.

{¶5} At trial, Victoria Bartlett testified that around 6:00 p.m. on June 15, 2021, she and her husband observed someone in an Impala throw "something large out the window. * * * Like, it was huge.  Like, I had to go around it."  Barlett and her husband also observed the vehicle drive erratically, "sometimes going off the roadway," "sometimes going into the other lane almost hitting several vehicles."  Bartlett called 911 while her husband photographed the license plate.

{¶6} Officer Steele testified that he responded to a dispatch regarding a reckless driver and, after he began to follow appellant and make his own observations, he activated his overhead lights. Appellant, however, continued to drive another block and a half. At that time, Steele activated his audible siren and appellant drove another quarter of a mile before he stopped.  Steele testified that he observed appellant drive left of center "completely over" the line and moved "from left to right inside the

vehicle, making furtive movements * * * that could either be attempting to hide contraband or something of that nature." Also during the pursuit, appellant drove approximately 10 miles per hour in a 25-mile-per-hour zone. Steele estimated that with activated lights he drove "several blocks, seven to eight blocks and around the corner." When appellant exited his vehicle, "[h]is clothes were disheveled," and he "was unsteady on his feet when I was talking to him." Steele advised appellant of his Miranda Rights and observed appellant's pupils:

> His eyes were pinpoint, constricted, not reactive to the light. It was daylight during that time. And once he was advised of his rights, he stated that he understood. And I asked him why it took him so long to pull over. He stated that he was doing a pill.

{¶7} Officer Steele described appellant's speech as "slow and slurred * * * difficult to understand," and noted that appellant said he had been "snorting a perc (Percocet)." Steele was familiar with appellant and believed appellant "was under the influence of some kind of narcotic." Video and audio from Steele's body camera recorded appellant's statement that he had been "snorting a f*cking pill."

{¶8} Officer Steele testified that he placed appellant "under arrest for OVI and put him in the back of my cruiser for failure to comply." As appellant entered the back of Steele's cruiser, he said, "I did one perc but one perc ain't going to do sh*t to me."

Steele checked appellant's information that "showed that he did not have a valid license through the State of Ohio nor any other state for that matter." In addition, Steele checked appellant's license plate with the LEADS database and discovered it registered to a gray Dodge, not the Impala.

**{¶9}** During Officer Steele's inventory search, he discovered inside the driver's door a plastic straw that contained white residue. Steele knew from his training and experience that straws are "commonly used to snort illicit narcotics." Further, Steele found a glass pipe with burn marks and residue, which, he knew from experience, is associated with the "use of illicit narcotics, specifically methamphetamine."

**{¶10}** At the police station Officer Steele invited appellant to participate in field sobriety and chemical tests. Appellant, however, refused and replied, "f*ck no." As Steele read appellant the BMV 2255 form regarding the consequences for an OVI chemical test refusal, appellant's speech and mannerisms became slower and he appeared "a lot more lethargic" at the jail. Steele also explained that, even if appellant had a legitimate prescription for Percocet, the jury could nevertheless find him guilty of OVI.

**{¶11}** After hearing the evidence adduced at trial, the jury found appellant guilty of OVI, fictitious plates, failure to comply, and the possession of drug paraphernalia. After a bench

trial, the trial court found appellant guilty of no operator's license and driving left of center. The trial court sentenced appellant to serve 120 days in jail for the OVI and for the failure to comply, to be served concurrently, and pay the court costs on the remaining charges. This appeal followed and this court consolidated the two appeals on February 16, 2023.

## Standard of Review

{¶12} As a threshold matter, because appellant challenges both the sufficiency of the evidence and the manifest weight of the evidence, we initially address both standards of review.

{¶13} A claim of insufficient evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380,386, 678 N.E.2d 541 (1997), syllabus; *State v. Blevins*, 2019-Ohio-2744, 140 N.E.3d 27, ¶ 18 (4th Dist.). When reviewing the sufficiency of the evidence, an appellate court's inquiry focuses primarily on the adequacy of the evidence; that is, whether the evidence, if believed, could reasonably support a finding of guilt beyond a reasonable doubt. *Id.* at syllabus. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense

beyond a reasonable doubt.  *E.g., Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991).

**{¶14}** Furthermore, under the sufficiency of the evidence standard a reviewing court does not assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction."  *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997) (Cook, J., concurring).  Therefore, when reviewing a sufficiency of the evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution.  *See, e.g., State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993).  A reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds could not reach the conclusion the trier of fact did.  *State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

**{¶15}** "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence."  *Thompkins*, 78 Ohio St.3d at 387.  "The question to be answered when a manifest weight

issue is raised is whether 'there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 81, quoting *State v. Getsy*, 84 Ohio St.3d 180, 193-194, 702 N.E.2d 866 (1998), citing *State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus.  A court that considers a manifest weight challenge must "'review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses.'" *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 208, quoting *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 328.  However, the reviewing court must bear in mind that credibility generally is an issue for the trier of fact to resolve.  *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008-Ohio-1744, ¶ 31.  "'Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.'" *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 20, quoting *State v. Konya*, 2d Dist. Montgomery No. 21434, 2006-Ohio-6312, ¶ 6, quoting *State v. Lawson*, 2d Dist. Montgomery No.

16288, 1997 WL 476684 (Aug. 22, 1997).

{¶16} Thus, an appellate court will generally defer to the trier of fact on issues of evidence weight and credibility, as long as a rational basis exists in the record for the fact-finder's determination. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012-Ohio-1282, ¶ 24; accord *State v. Howard*, 4th Dist. Ross No. 07CA2948, 2007- Ohio-6331, ¶ 6 ("We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and weight."). Accordingly, if the prosecution presented substantial credible evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. *E.g.*, *Eley*. *Accord Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, quoting *Thompkins*, 78 Ohio St.3d at 387, quoting Black's Law Dictionary 1594 (6th ed.1990) (a judgment is not against the manifest weight of the evidence when "'"the greater amount of credible evidence"'" supports it).

{¶17} Consequently, when a court reviews a manifest weight of the evidence claim, a court may reverse a judgment of conviction only if it appears that the fact-finder, when it resolved the conflicts in evidence, "'clearly lost its way and created such a

manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *accord McKelton* at ¶ 328.  Finally, a reviewing court should find a conviction against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the conviction.'"  *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717; *accord State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 166; *State v. Lindsey*, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

I.

**{¶18}** In his first assignment of error, appellant asserts that sufficient evidence does not support his fictitious plates conviction.  In particular, appellant contends that the state failed to produce evidence that appellant had knowledge of, or reason to suspect, that the license plate he displayed on his vehicle came from another vehicle.

**{¶19}** R.C. 4549.08 sets forth the essential elements of use of unauthorized plates:

> (A) No person shall operate or drive a motor vehicle upon the public roads and highways in this state if it displays a license plate or a distinctive number or identification mark that meets any of the following criteria:

(1) Is fictitious;

(2) Is a counterfeit or an unlawfully made copy of any distinctive number or identification mark;

(3) Belongs to another motor vehicle, provided that this section does not apply to a motor vehicle that is operated on the public roads and highways in this state when the motor vehicle displays license plates that originally were issued for a motor vehicle that previously was owned by the same person who owns the motor vehicle that is operated on the public roads and highways in this state, during the thirty-day period described in division (A)(4) of section 4503.12 of the Revised Code.

(B) A person who fails to comply with the transfer of a registration provisions of section 4503.12 of the Revised Code and is charged with a violation of that section shall not be charged with a violation of this section.

(C) Whoever violates division (A)(1),(2), or (3) of this section is guilty of operating a motor vehicle bearing an invalid license plate or identification mark, a misdemeanor of the fourth degree on a first offense and a misdemeanor of the third degree on each subsequent offense.

{¶20} However, R.C. 4549.08 does not set forth a culpable mental state, and therefore indicates a purpose to impose strict liability. In *State v. Johnson,* 128 Ohio St.3d 107, 2010-Ohio-6301, 942 N.E.2d 347, the Supreme Court of Ohio observed:

[A] separate mental state need not be specified for every element of an offense. And although the general rule for criminal liability requires a culpable mental state, a guilty intent is not necessary for every offense. *State v. Morello* (1959), 169 Ohio St. 213, 8 O.O.2d 192, 158 N.E.2d 525. Offenses without any culpable mental state are strict-liability offenses, and they impose liability for simply doing a prohibited act. In this type of case, ignorance of a fact or an element of the offense is not a defense. *See State v. Kelly* (1896), 54 Ohio St. 166, 43

N.E. 163.

*Johnson* at ¶ 17.

**{¶21}** Because strict liability for an offense is the exception to the rule, the General Assembly set forth in R.C. 2901.21(B) a test that indicates whether an offense is a strict liability offense:

> "When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense." (Emphasis added.)

**{¶22}** Here, we believe that the language of R.C. 4549.08 suggests that the General Assembly intended to impose strict criminal liability. As noted previously, the statute does not specify a culpable mental state. "Statutes and ordinances enacted for the purpose of promoting the safety, health or well-being of the public are generally meant to be enforced under a strict liability standard." *Columbus v. Shirkey*, 10th Dist. Franklin No. 08AP-752, 2009-Ohio-1329, ¶ 30. In fact, traffic offenses and motor vehicle laws are areas that the United States Supreme Court lists as being amenable to the imposition of strict liability. *United States v. Morissette*, 342 U.S. 246, 262, 72 S.Ct. 240, 96

L.Ed. 288 (1952). Ohio courts have held likewise, even for much more serious traffic offenses such as driving under the influence. *See State v. Cleary*, 22 Ohio St.3d 198, 199, 490 N.E.2d 574 (1986). See, also, *State v. Bentz*, 2 Ohio App.3d 352, 442 N.E.2d 90 (1st Dist. 1981). *But see, State v. Besler,* 1st Dist. Hamilton No. C-120390, 2013-Ohio-1284, ¶ 9 (nothing in plain language of R.C. 4549.08 indicates purpose to impose strict liability); *see also State v. Frazier*, 7th Dist. No. 01CA65, 2003-Ohio-1216, ¶ 14-19.

**{¶23}** In the case sub judice, we believe the evidence adduced at trial supported appellant's fictitious plate conviction pursuant to R.C. 4549.08. Accordingly, we overrule appellant's first assignment of error.

## II.

**{¶24}** In his second assignment of error, appellant asserts that the jury instruction regarding the elements of the offense of fictitious plates is erroneous as a matter of law. In particular, appellant argues that the trial court misadvised the jury of the recklessness element of the fictitious plates charge.

**{¶25}** During jury instructions, when defining the elements of R.C. 4549.08, the trial court stated:

> 1) That on or about the 15th Day of June 2021, in Chillicothe, Ross County, Ohio; (2) The Defendant; (3) Recklessly operated or drove a motor vehicle upon the

public roads and highways of Ohio; (4) The motor vehicle displayed a license plate; and (5) The license plate belonged to another motor vehicle that was issued for the same person who owned the motor vehicle in this case and that person failed to apply to transfer the registration within thirty days of the date of transfer of the registration.

**{¶26}** Appellant argues that the instruction that required them to find that appellant drove recklessly on public roads misled the jury.

**{¶27}** "A criminal defendant has the right to expect that the trial court will give complete jury instructions on all issues raised by the evidence." *State v. Howard,* 4th Dist. Ross No. 07CA2948, 2007-Ohio-6331, ¶ 26. "[A] trial court should give a proposed jury instruction if it is a correct statement of the law and is applicable to the facts of the particular case." *Id.,* citing *Murphy v. Carrollton Mfg. Co.,* 61 Ohio St.3d 585, 591, 575 N.E.2d 828 (1991).

**{¶28}** When reviewing errors in a jury instruction, a trial court must consider a jury charge as a whole. *State v. Huish*, 2023-Ohio-365, 208 N.E.3d 270, ¶ 54 (10th Dist.), citing *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d 257, 2015-Ohio-229, 29 N.E.3d 921, ¶ 35-36. However, "[a]n unnecessary, ambiguous, or even affirmatively erroneous portion of a jury charge does not inevitably constitute reversible error." *Id.* When a jury

instruction incorrectly states the law, a reviewing court applies a mixed de novo and abuse of discretion standard of review, examining the jury charge as a whole and determining "whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." *Id.*

**{¶29}** Appellee points out that appellant failed to object to the jury charge at trial. An appellant who fails to object as Crim.R. 30(A)5 requires "is precluded from claiming error in the instructions to the jury unless the instructions constitute plain error under Crim.R. 52(B)." *State v. McCown*, 10th Dist. No. 06AP-153, 2006-Ohio-6040, ¶ 36. Crim.R. 52 states, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Here, counsel for appellant failed to object to the alleged issue in the jury instructions before the trial court. Thus, we examine the claimed error under a plain error analysis.

**{¶30}** The Supreme Court of Ohio has found that an erroneous jury instruction does not meet the plain error threshold unless, " 'but for the error, the outcome of the trial clearly would have been otherwise.' " *McCown* at ¶ 38, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus; *State v. Cunningham*, 105 Ohio St.3d 197, 2004-Ohio-7007, 824 N.E.2d 504, ¶ 56, citing *State v. Underwood*, 3 Ohio St.3d 12, 444 N.E.2d

1332 (1983), syllabus.

{¶31} In *State v. White*, 2d Dist. Montgomery No. 17739, 2000 WL 799762 (June 23, 2000), language in a jury instruction did not track the domestic violence statute.  The court concluded that the defendant did not demonstrate any confusion that stemmed from the slight rewording of the charge in the complaint and the jury instruction.  Further, the court noted that it did not see how the trial's result would have been otherwise if the statute had been tracked word-for-word.  Consequently, in the absence of such a determination, the court could not find plain error.  *Id.* at 3, citing *Underwood*, *supra,* at the syllabus.

{¶32} In *State v. Hayes,* 4th Dist. Adams No. 17CA1056, 2019-Ohio-257, a grand jury returned an indictment that charged the defendant with 92 counts of unauthorized use of OHLELG and 17 counts of unauthorized use of LEADS.  On appeal, the defendant argued that trial counsel should have requested an affirmative defense instruction.  This court concluded that no reasonable probability existed that the outcome of the trial would have been different if the court had given a R.C. 2913.03(C)(2) affirmative defense instruction.  *Id.* at ¶ 63.  *See also State v. Miller*, 1st Dist. Hamilton No. C-990166, 2000 WL 216632 (Feb.25, 2000)(no plain error when trial court omitted part of reasonable doubt instruction), *State v. Douthit,* 1st Dist. Hamilton No. C-910394, C-

910395, 1992 WL 180875 (July 29, 1992)(no plain error when trial court made erroneous references to defendant's burden of proof in closing argument and in initial jury instructions because outcome would not have been different), *State v. Reeves,* 12th Dist. Clermont No. CA2020-01-001, 2020-Ohio-5565, ¶ 16 (no plain error when trial court failed to instruct jury on abandonment in theft trial because outcome would not have been different), *State v. Curtis,* 5th Dist. Stark No. 2022CA00036, 2023-Ohio-1652, ¶ 34-35 (charge did not mislead jury in matter materially affecting defendant's substantial rights when jury charge did not correctly state Ohio law on complicity), *Huish*, *supra* at ¶ 59 (conviction upheld when written instructions inadvertently stated "find the not defendant guilty" instead of "find the defendant not guilty.")

{¶33} In the case sub judice, we recognize that the trial court inserted a reckless driving requirement into the fictitious plates jury instruction.  However, we cannot say that the error affected appellant's substantial rights and impacted the trial's outcome. *Long, supra.*  Here, the court's instruction did not increase the likelihood of a guilty verdict, but instead added another element that arguably decreases the potential for a guilty verdict.  Thus, we believe that appellant failed to demonstrate that, but for the incorrect jury instruction, the trial would have had a different outcome.

**{¶34}** Accordingly, we overrule appellant's second assignment of error.

                               III.

**{¶35}** In his third assignment of error, appellant asserts that sufficient evidence does not support his conviction for operating a motor vehicle while impaired.

**{¶36}** The state charged appellant with OVI in violation of R.C. 4511.19(A)(1)(a). Pursuant to the statute, "[n]o person shall operate any vehicle ... within this state, if, at the time of the operation * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." R.C. 4511.19(A)(1)(a)." Appellant contends that the evidence adduced at trial failed to prove that he had been impaired at the time he drove the vehicle.

**{¶37}** We point out that this particular section of the statute does not require evidence of a specific blood, breath, or urine alcohol concentration to prove impairment. Instead, this section requires the state to establish that a defendant operated a vehicle "when his faculties where appreciably impaired * * *." *State v. Smith*, 7th Dist. Mahoning No. 05 MA 219, 2007-Ohio-3182, ¶ 76, quoting *State v. Crites*, 7th Dist. Harrison No. 99-518-CA, 2000 WL 1781450 (Nov.30, 2000). "As such, the defendant's behavior is the primary consideration." *Id.*

**{¶38}** In *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008-

Ohio-1744, an officer testified that the defendant appeared

disoriented, confused, slurred his speech, and smelled of an

alcoholic beverage at the crash scene. *Id.* at ¶ 26. This court

concluded that sufficient evidence supported the conviction. *Id.*

at ¶ 18. *See also State v. May*, 2018-Ohio-1510, 111 N.E.3d 48 (8th

Dist.) (evidence sufficient to show defendant driving under

influence when physiological factors like glassy or bloodshot

eyes, slurred speech, and confused appearance demonstrated impaired

physical and mental ability to drive), *State v. Gladman,* 2d Dist.

Darke No. 2013 CA 99, 2014-Ohio-2554, (odor of alcohol, bloodshot,

glassy eyes, slurred speech, difficulty walking demonstrated

violation of R.C. 4511.19(A)(1)(a)), *State v. May,* 2011-Ohio-6637,

970 N.E.2d 1029 (7th Dist)(defendant's glassy eyes, slow and

slurred speech, stumbling gait and refusal to take field sobriety

supported R.C. 4511.19(A)(1)(a) conviction), *State v. Iloba*, 9th

Dist. Wayne No. 20AP0030, 2021-Ohio-3700, ¶ 17 ("both reasonable

suspicion and probable cause can be demonstrated with reference to

physiological factors that tend to indicate impairment, such as an

odor of alcohol on a suspect's person, bloodshot or glassy eyes,

slurred speech, or a confused manner."), *State v. Homan,* 89 Ohio

St.3d 421*,* 732 N.E.2d 952 (2000)(defendant's erratic driving, red

and glassy eyes, the smell of alcohol on her breath, and admission

to consuming alcoholic beverages, amply supported decision to

arrest, even where no field sobriety tests were performed or where the results were suppressed).

{¶39} In the case at bar, appellant refused both field sobriety and chemical tests.  However, an eye witness and Officer Steele testified that appellant drove erratically.  Moreover, appellant eluded Steele for several blocks, appellant's clothing appeared "dissheveled," appellant appeared "unsteady on his feet," exhibited speech "slow and slurred * * * difficult to understand," pupils "constricted," and stated he had been, "snorting a Perc (Percocet)."

{¶40} After our review of the evidence adduced at trial, we conclude that the prosecution adduced sufficient evidence at trial, if believed, to support the finding of guilt beyond a reasonable doubt for a violation of R.C. 4511.19(A)(1)(a).  Here, when viewed in a light most favorable to the prosecution, any rational trier of fact could have found all essential elements beyond a reasonable doubt.

{¶41} Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error.

IV.

{¶42} In his fourth assignment of error, appellant asserts that insufficient evidence supports his conviction for failure to comply and his conviction is also against the manifest weight of the

evidence.  Specifically, appellant asserts that the state must produce some evidence to show that he attempted to flee or evade police officers to support a conviction.

{¶43} In this assignment of error, appellant challenges both the weight and sufficiency of the evidence.  As noted above, the issue of whether the prosecution adduced sufficient evidence at trial to sustain a conviction is a question of law.  R.C. 2921.331(B) required the state to prove that appellant operated his vehicle "so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop."

{¶44} We begin with appellant's sufficiency argument.  A challenge to the sufficiency of the evidence tests "whether, when viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 118, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶45} Appellant maintains that the evidence adduced at trial failed to show that he willfully eluded or fled from Officer Steele.  Appellant contends that, if appellant intended to flee and evade police, he "did an exceptionally bad job of it," and points

to the fact that "he drove slowly at about 10 miles per hour - fifteen miles per hour below the speed limit," and "never exceeded 20 miles per hour."  Finally, appellant argues that no evidence exists to show that he did anything to avoid contact with Officer Steele once he came to a stop.

{¶46} In *State v. Butler*, 9th Dist. Summit No. 21870, 2004-Ohio-5164, the court affirmed the defendant's fleeing and eluding conviction when the defendant engaged in a low-speed chase, traveled at approximately 25 m.p.h., and used appropriate signals. *Id.* at ¶ 3.  *See also State v. Rupp,* 12th Dist. Butler No. CA2001-06-135, 2002-Ohio-1600 ("slow-speed chase" conviction for failure to comply with order or signal of police officer not against manifest weight of evidence), *State v. Elijah*, 2d Dist. Montgomery No. 18034, 2000 WL 968781 (July 14, 2000) (evidence supported failure to comply when defendant failed to stop for cruiser's lights and sirens during a five-minute low-speed chase), *State v. Scott,* 8th Dist. Cuyahoga No. 97676, 2012-Ohio- 3811 (failure to comply upheld when chase short and slow, but evidence established defendant did not stop or pull over after police activated siren and lights, traveled approximately five blocks, drove over posted speed limit and through several stop signs).

{¶47} The evidence adduced in *Butler* and the foregoing cases

bear great similarity to the evidence adduced in the case sub judice. Thus, even though appellant drove slowly and did not exceed 20 miles per hour, his failure to stop when the officer activated his siren and lights constituted a violation of R.C. 2921.331(B). Thus, we conclude that the prosecution adduced sufficient evidence at trial to support a guilty verdict for failing to comply in violation of R.C. 2921.331(B).

{¶48} Appellant also contends that his conviction for failure to comply is against the manifest weight of the evidence. As noted above, in a manifest weight review, we must "weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice." *Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶49} In the case at bar, when we weigh the evidence and all reasonable inferences from Officer Steele's testimony, we cannot conclude that the trier of fact lost its way. Although appellant drove slowly during his flight from Officer Steele, the fact remains that appellant drove approximately seven or eight blocks before he stopped his vehicle after Steele activated his lights and siren. Thus, appellant's behavior may be reasonably understood as an attempt to evade law enforcement. *See Scott,* 8th Dist. Cuyahoga

No. 97676, 2012-Ohio-3811 (although chase "may not have been long" and defendant "not traveling at a high rate of speed," evidence established defendant did not stop or pull over to the right after the police activated their siren and lights). Here, the evidence adduced at trial showed that appellant drove another block and a half after Officer Steele activated his overhead lights, and another quarter of a mile after Officer Steele activated his audible siren. Thus, in view of the foregoing, we conclude that appellant's conviction for failure to comply is not against the manifest weight of the evidence.

**{¶50}** Accordingly, based upon the foregoing reasons, we overrule appellant's fourth assignment of error.

V.

**{¶51}** In his final assignment of error, appellant asserts that insufficient evidence supports his conviction for driving without an operator's license.

**{¶52}** R.C. 4510.12 sets forth the offense of operating a motor vehicle without a valid license. R.C. 4510.12(C)(1) and (2) provide that if the trier of fact finds that the offender "never has held a valid driver's license * * * issued by this state or any other jurisdiction * * * the offense is an unclassified misdemeanor." R.C. 4510.12(C)(1). In contrast, if the offender's license has expired, the offense is a minor misdemeanor. R.C.

4510.12(C)(2).

**{¶53}** In the case sub judice, the trial court found appellant guilty of driving without an operator's license, after a bench trial conducted simultaneously with his other charges, and sentenced him to pay court costs.  However, appellant contends that the trial court failed to make a finding that appellant has never held a driver's license as required by R.C. 4510.12(C)(1) to qualify the offense as an unclassified misdemeanor.  Appellant argues that although Officer Steele testified that appellant did not have a valid license at the time of the offense, he did not specify whether appellant ever had a license, or that he had one, but his license expired or had been suspended.  However, because appellant did not object at trial, we must conduct a plain error review of this issue.

**{¶54}** R.C. 4510.12(B) allows non-certified copies of LEADS records or BMV records to be submitted as prima facie evidence of the fact that an individual did not have a valid driver's license at the time of an alleged R.C. 4510.12(A)(1) violation.  Further, R.C. 4510.12(B) provides that "[t]he person charged with a violation of division (A)(1) or (2) of this section may offer evidence to rebut this prima-facie evidence."  We find no LEADS or BMV records in the record or evidence that appellant rebutted the charge. The traffic ticket is marked "No OL" and cites R.C.

4510.12, but does not specify (C)(1) or (C)(2). Officer Steele testified at trial that he checked appellant's record "and it showed that he did not have a valid license through the State of Ohio nor any other state for that matter." While the testimony could arguably be viewed that appellant "never" had a license, the testimony sufficiently established that appellant did not have a valid license as per R.C. 4510.12(C)(1) to support an unclassified misdemeanor. We also recognize that appellant offered no evidence to the contrary. *See e.g., State v. Deacey*, 2d Dist. Montgomery No. 27308, 2017-Ohio-8102. Here appellant did not appear to dispute at trial that he had no valid license on June 15, 2021. *See State v. Thomas,* 7th Dist. Mahoning No. 08 MA 89, 2009-Ohio-2652, ¶, *State v. Johnson*, 6th Dist. Lucas No. L-18-1214, 2019-Ohio-4613 (upheld R.C. 4510.12 conviction even though traffic ticket did not include degree of misdemeanor or indicate whether defendant had prior offenses). Consequently, after our review we believe that the state adduced sufficient evidence to support appellant's conviction for violating R.C. 4510.12. Therefore, we overrule appellant's final assignment of error.

{¶55} Accordingly, for all of the foregoing reasons, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed.  Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____
                                        Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.